UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| COMMONWEALTH LAND TITLE INSURANCE COMPANY, <br><br> *Plaintiff,* <br><br> v. <br><br> 2610 CROPSEY DEVELOPMENT CORP., <br><br> *Defendant.* | **COMPLAINT FOR DECLARATORY JUDGMENT AND RELATED RELIEF** |

Plaintiff COMMONWEALTH LAND TITLE INSURANCE COMPANY ("CLTIC"), by and through its attorneys, FIDELITY NATIONAL LAW GROUP, as and for its Complaint against Defendant 2610 Cropsey Development Corp. ("Cropsey") alleges as follows:

## NATURE OF THIS ACTION

1. This matter concerns a coverage dispute between the insurer, CLTIC, and, the insured, 2610 Cropsey Development Corp. ("Cropsey"), arising from owner's policies of title insurance, each with policy limits of $2,200,000, issued to Cropsey and underwritten by CLTIC in connection with Cropsey's ownership of two abutting lots of real property commonly known as 2610-2620 Cropsey Avenue, Brooklyn, New York, 12114 (Block 6933, Lot 48 and 51) (collectively referred to as the "Property", separately as "Lot 48" and "Lot 51"), and portions of a 50-foot by 181-foot private mapped street known as Centre Place which abuts the Property.

2. In connection with Cropsey's acquisition of Lot 48 and Lot 51, Ridge Abstract Corp. ("Ridge"), as policy issuing agent for CLTIC, issued a 1992 ALTA owner's policy of title

insurance, with a policy date of April 27, 2005, bearing title policy no. B66-0327951, and with a policy amount of $2,200,000 (the "Original Ridge Policy").

3. Thereafter, Ridge issued a modified policy bearing the same policy number, policy date and policy amount as the Ridge Policy (the "Modified Ridge Policy") (the Original Ridge Policy together with the Modified Ridge Policy are hereinafter referred to as the "Ridge Policy").

4. The coverage dispute arises from a prior quiet title action entitled *Waterview Towers, Inc. v. 2610 Cropsey Development Corp., et. al.*, Index No. 11719/2007) (the "Quiet Title Action"), between Cropsey and Waterview Towers Inc. ("Waterview"), the owner of real property commonly known as 2630 Cropsey Avenue, Brooklyn, New York 12214 (Block 6933, Lot 55) (the "Waterview Property"), over Centre Place. Centre Place abuts and lies between the Property and the Waterview Property.

5. In the Quiet Title Action, Waterview originally claimed an interest to the entirety of Centre Place by way of adverse possession. However, throughout the litigation, the area of land which Waterview sought to quiet by adverse possession was more clearly defined as up to the center line of that portion of Centre Place that abuts the Waterview Property (the "Disputed Area"). Cropsey maintained during the Quiet Title Action that it held title to the entirety of Centre Place.

6. During the pendency of the Quiet Title Action, Cropsey obtained a policy of title insurance from Sienna Abstract LLC ("Sienna") insuring the Disputed Area. Sienna, as a policy issuing agent for CLTIC, issued a 2006 ALTA owner's policy of title insurance with a policy date of August 7, 2008, bearing policy number C30-0036060, and with a policy amount of $2,200,000 (the "Sienna Policy", together with the Ridge Policy, the "Policies").

7. Cropsey alleges in its October 21, 2021 claim letter, that "[b]y the time the Sienna Policy was issued in on or about August 7, 2008, Cropsey was represented in the Action by

[CLTIC's] agent Robert Prignoli, Esq. who at the time was the principal for Sienna Abstract, LLC."

8. Upon information and belief, when issuing the Sienna Policy, Robert Prignoli, Esq. ("Mr. Prignoli") totally abandoned CLTIC's interests and acted entirely for the benefit and purpose of Cropsey and to the detriment of CLTIC.

9. Ultimately, by Decision & Order dated October 31, 2016 (the "October 2016 Judgment"), and Order and Judgment After Trial dated December 13, 2016 (the "2016 Order") the trial court ruled in favor of Waterview. Cropsey appealed the 2016 Order and the Supreme Court of the State of New York, Appellate Division, Second Judicial Department ("Second Department") affirmed the 2016 Order (the "Appeal").

10. Nearly 12 years after the commencement of the Quiet Title Action and 13 months after the Appeal was fully briefed, Cropsey submitted, for the first time, a title claim (the "Claim") to CLTIC seeking coverage under the Policies for the Quiet Title Action and indemnification for purported losses suffered as a result.

11. CLTIC denied coverage for the Claim under a number of the Policies' Conditions, Stipulations, Exclusions from Coverage and Exceptions from Coverage, including, in part: (i) Condition 3, which limits CLTIC's liability for late notice of a claim; (ii) Condition 1 and Schedule A which defines the "land" insured under the Policies; (iii) Exceptions 2 and 3 of the respective Policies, which removes coverage for parties in possession; (iv) Exclusion 3 (a), which removes coverage for title defects "created, suffered, assumed or agreed to by the insured claimant"; and (v) Exclusion 3 (b), which removes matters known to Cropsey, not recorded in the Public Records at the Date of Policy, and not disclosed in writing to CLTIC.

12. Further, with regard to Condition 3 specifically, it is CLTIC's position that the Quiet Title Action is not a covered matter under the Policies, and even if it was initially covered, which it was not, CLTIC has no liability to Cropsey because Cropsey's late notice of Claim fully prejudiced CLTIC, as it deprived CLTIC an opportunity to defend Cropsey in the Quiet Title Action and Appeal, and/or to resolve such matter on more favorable terms to Cropsey.

13. By this Action, CLTIC seeks a judgment and order (1) declaring that CLTIC has no obligation under the $2,200,000 Policies to indemnify Cropsey in connection with the Quiet Title Action or the Appeal , and (2) declaring that CLTIC has no obligation under the Policies to reimburse Cropsey for attorneys' fees, costs and other expenses associated with the Quiet Title Action and/or the Appeal that was pending for 13 years.

14. This case presents an "actual controversy" within the meaning of the Declaratory Judgment Act, in which "any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a).

## PARTIES

15. At all times mentioned, CLTIC was and remains a corporation organized and existing under the laws of the state of Florida duly authorized to do business in the State of New York. CLTIC's principal place of business is located at 601 Riverside Avenue, Building 5, Jacksonville, FL 32204.

16. At all times mentioned, Defendant 2610 Cropsey Development Corp. ("Cropsey") was and remains a domestic business corporation organized and existing under the laws of the State of New York and holds title to the Property. Cropsey's principal place of business is located at 202 Bay 46th Street, Brooklyn, New York 11214.

## JURISDICTION

17. Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because the parties are diverse in citizenship and the amount in controversy exceeds $75,000. Cropsey claims that its loss under the Policies is approximately $3,600,000, resulting from a diminution in value from the lost area of land.

18. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the property that is the subject of this action is located within the District of this Court.

## FACTUAL BACKGROUND

### The Recorded Property Deeds

19. On April 27, 2005, Cropsey acquired title to the Property by deed recorded in the Office of the City Register of the City of New York (the "Register") on May 27, 2005, at CRFN 2005000313786 (the "Vesting Deed").

20. On May 14, 2007, Cropsey executed a deed recorded in the Register against Lot 51 on May 31, 2007, at CRFN 2007000281710, which deed conveyed to itself title to Lot 51 and up to the center line of that portion of Centre Place that abuts Lot 51 (the "First 2007 Deed").

21. Also on May 14, 2007, Cropsey executed a deed recorded in the Register against Lot 48 on May 31, 2007, at CRFN 2007000281711, which deed conveyed to itself title to Lot 48 and up to the center line of that portion of Centre Place that abuts Lot 48 to Cropsey (the "Second 2007 Deed").

22. On April 30, 2008, Cropsey executed a correction deed recorded in the Register against Lot 48 on May 2, 2008, at CRFN 2008000178352, which deed conveyed to itself title to Lot 48 and up to the center line of that portion of Centre Place that abuts Lot 48.

23. On August 7, 2008, Cropsey executed a deed recorded in the Register on September 3, 2008, at CRFN 2008000178352, which deed conveyed to itself title to the Disputed Area (the "2008 Deed").

## The Policies

**The Original Ridge Policy and Modified Ridge Policy**

24. In connection with the Vesting Deed, Ridge, as a policy issuing agent for CLTIC, issued the Original Ridge Policy. A true and correct copy of the Original Ridge Policy is attached hereto as **Exhibit "A."**

25. Schedule A of the Original Ridge Policy insured that Cropsey was vested with title to the Property.

26. Thereafter, Ridge issued the Modified Ridge Policy. A true and correct copy of the Modified Ridge Policy is attached hereto as **Exhibit "B."** A true and correct copy of the policy jacket applicable to the Modified Ridge Policy is attached hereto as **Exhibit "C."**

27. The difference between the Original Ridge Policy and Modified Ridge Policy is that Schedule A of the Modified Ridge Policy includes the Property and up to the center line of Centre Place which abuts Lots 48 and 51.

28. Upon information and belief, the Modified Ridge Policy was issued for purposes of changing the legal description in the Original Ridge Policy, with the terms of the Modified Ridge Policy being the prevailing terms. The Modified Ridge Policy supersedes the Original Ridge Policy in its entirety.

**The Sienna Policy**

29. Sienna, as a policy issuing agent for CLTIC, issued the Sienna Policy. A true and correct copy of the Sienna Policy is attached hereto as **Exhibit "D"**. A true and correct copy of the policy jacket applicable to the Sienna Policy is attached hereto as **Exhibit "E."**

30. Schedule A of the Sienna Policy insures title to the Disputed Area, subject to the Conditions, Exclusions, and Exceptions contained therein.

31. At the time the Sienna Policy was issued, the Quiet Title Action filed by Waterview against Cropsey, in which Waterview sought a declaration that Waterview owned the Disputed Area, had been pending for over 16 months.

32. Cropsey alleges in its October 21, 2021 claim letter, that "[b]y the time the Sienna Policy was issued in on or about August 7, 2008, Cropsey was represented in the Action by [CLTIC's] agent Robert Prignoli, Esq. who at the time was the principal for Sienna Abstract, LLC."

33. Upon information and belief, when the Sienna Policy was issued, the interests of CLTIC were completely adverse to Cropsey because disclosure of the Quiet Title Action, which was not disclosed to CLTIC by Cropsey or its attorney Mr. Prignoli, would have impacted the terms of the Sienna Policy if and to the extent such a policy was issued.

34. Upon information and belief, both Mr. Prignoli and Cropsey had knowledge of the Quiet Title Action at the time the Sienna Policy was issued but did not disclose the existence of the Quiet Title Action to CLTIC.

35. Upon information and belief, CLTIC is the victim of a scheme undertaken by Mr. Prignoli and Cropsey for the benefit of Cropsey and to the detriment of CLTIC.

36. Because, upon information and belief, the existence of the Quiet Title Action was concealed from CLTIC, the Sienna Policy was issued as is, thereby providing Cropsey with title

7

insurance for land that was not insured prior to the commencement of the Quiet Title Action and protecting Cropsey from losses suffered as a result of the Quiet Title Action.

37. Upon information and belief, the Sienna Policy was procured for purposes of providing protection to Cropsey from losses suffered as a result of the Quiet Title Action.

38. Upon information and belief, CLTIC underwrote the Sienna Policy without knowledge of the existence of the Quiet Title Action and was wrongfully induced into insuring the Disputed Area, which was the subject of the Quiet Title Action. Now, Cropsey seeks payment from CLTIC for its losses resulting from the Quiet Title Action.

39. In other words, upon information and belief, Cropsey and Mr. Prignoli conspired to conceal the existence of the Quiet Title Action from CLTIC so that if the Disputed Area was lost, CLTIC would be obligated to pay Cropsey under the Sienna Policy for its loss.

40. Upon information and belief, in his dual role as policy issuing agent for CLTIC and litigation counsel for Cropsey in the Quiet Title Action, Mr. Prignoli totally abandoned CLTIC's interests and acted entirely for the benefit and purpose of Cropsey.

41. Indeed, upon information and belief, in issuing the Sienna Policy, Mr. Prignoli ignored, abandoned and breached the terms of Sienna's agency agreement with CLTIC by issuing the Sienna Policy with limits of $2,200,000, without CLTIC's consent, and committing CLTIC to insure title to property, which Sienna knew was subject to a dispute, without CLTIC's consent, thereby acting completely adverse to CLTIC and solely for the benefit of Cropsey.

**The Applicable Policy Provisions Notice of Claim**

42. The Sienna Policy contains the following CONDITION 3-NOTICE OF CLAIM provision:

> "*The Insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 5(a) of these Conditions, (ii) in case Knowledge*

*shall come to an Insured hereunder of any claim of title or interest that is adverse to the Title, as insured, and that might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if the Title, as insured, is rejected as Unmarketable Title. If the Company is prejudiced by the failure of the Insured Claimant to provide prompt notice, the Company's liability to the Insured Claimant under the policy shall be reduced to the extent of the prejudice."*

43. The Ridge Policy contains the following CONDITION 3-NOTICE OF CLAIM provision:

*"The insured shall notify the Company promptly in writing: (i) In case of any litigation as set forth in 4 (a) below, (ii) In case knowledge shall come to an insured hereunder of any claim of title or interest which is adverse to the title to the estate or interest, as insured, and which might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if title to the estate or interest, as insured, is rejected as unmarketable.*

*If prompt notice shall not be given to the Company, then as to the insured all liability of the Company shall terminate with regard to the matter or matters for which prompt notice is required; provided, however, that failure to notify the Company shall in no case prejudice the rights of any insured under this policy unless the Company shall be prejudiced by the failure and then only to the extent of the prejudice".*

**Condition 1 – Definition of Terms, "Land"**

44. The Sienna Policy contains the following CONDITION 1: DEFINITION OF TERMS, "LAND" provision:

*"(g) "Land": The land described in Schedule A, and affixed improvements that by law constitute real property. The term "Land" does not include any property beyond the lines of the area described in Schedule A, nor any right, title, interest, estate, or easement in abutting streets, roads, avenues, alleys, lanes, ways, or waterways, but this does not modify or limit the extent that a right of access to and from the Land is insured by this policy."*

45. The Ridge Policy contains the following CONDITION 1: DEFINITION OF TERMS, "LAND" provision:

*d) "land": the land described or referred to in Schedule A, and improvements affixed thereto which by law constitute real property. The term "land" does not include any property beyond the lines of the area described or referred to in Schedule A, nor any right, title, interest, estate or easement in abutting streets,*

9

*roads, avenues, alleys, lanes, ways or waterways, but nothing herein shall modify or limit the extent to which a right of access to and from the land is insured by this policy."*

**Rights of Tenants in Possession**

46. The Sienna Policy contains the following Rights of Tenants in Possession exception:

*Exception 3: "The policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees, or expenses) which may arise by reason of: . . ."3. Rights or claims of parties in possession not shown in the public records.*

47. The Ridge Policy contains the same Rights of Tenants in Possession exception:

*Exception 2: "The following are expressly excluded from coverage of Policy, and the Company will not pay loss or damage costs, attorneys' fees, or expenses which arise by reason of:. . .(2) Rights of tenants or persons in possession."*

**Exclusions 3(a) and 3(b) – Defects Created by or Known to the Insured**

48. The Sienna Policy contains Exclusions 3(a) and 3(b), which state, the following:

*"The following matters are expressly excluded from coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of: . . .3. Defects, liens, encumbrances, adverse claims, or other matters (a) Created, suffered, assumed, or agreed to by the Insured Claimant;(b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy."*

49. The Ridge Policy contains the same Exclusions 3(a) and 3(b), which state, the following:

*"The following matters are expressly excluded from coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of: . . .3. Defects, liens, encumbrances, adverse claims, or other matters (a) Created, suffered, assumed, or agreed to by the insured claimant;(b) not known to the Company, not recorded in the Public Records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy."*

**The Quiet Title Action**

50. As also noted below, the following events concerning the litigation of the Quiet Title Action were only first learned by CLTIC on or after December 18, 2018 or later, when Cropsey first submitted a claim under the Policies to CLTIC, which was after Cropsey's loss of the Quiet Title Action, and even a year after the appellate briefs to the Second Department in the Quiet Title Action had been fully submitted.

51. In 2006, prior to the commencement of the Quiet Title Action, Cropsey sent a letter to Waterview asserting an ownership interest to the entirety of Centre Place and demanding that Waterview no longer park cars on the Disputed Area.

52. On April 6, 2007, Waterview commenced the Quiet Title Action by filing a summons and complaint seeking to quiet title to all of Centre Place by adverse possession.

53. On June 14, 2007, Cropsey filed an answer with affirmative defenses and counterclaims.

54. On February 6, 2009, Waterview filed an amended complaint, which redefined the land to be quieted as being limited to the Disputed Area (up to the center line of that portion of Centre Place that abuts the Waterview Property).

55. On February 25, 2009, Cropsey filed a verified amended answer (the "Amended Answer") with affirmative defenses and five counterclaims, which sought, in relevant part, a judgment declaring that Cropsey was the sole owner of Centre Place and Plaintiff has no right, title or interest in Centre Place.

56. Waterview filed a reply to the Amended Answer.

57. On July 13, 2014, the eve of trial, Waterview filed a second amended verified complaint which sought a judgment declaring that Waterview holds title to the Disputed Area in

11

fee, the named defendants hold no right, title or interest in the Disputed Area, and Waterview is the sole owner of the Waterview Property.

58. During trial, John Giammona, Cropsey's principal, Mr. Pomerantz, an expert in land title, and Donald Franklin, an expert on damages, testified on behalf of Cropsey.

59. During his testimony, Mr. Giammona admitted, under oath, on redirect from Waterview's counsel, and over objection by counsel for Cropsey, that he did not submit a claim to CLTIC in connection with the matters at issue in the litigation. The testimony follows:

> **Q: You said you received title insurance. Have you submitted a claim to Commonwealth Title to defend this case?**
>
> **MS. AGNEW: Your Honor, objection. That's outside the scope of this litigation.**
>
> **THE COURT: Overruled. You're moving for damages.**
>
> **A: No, I haven't filed any claim against the title insurance company.**

60. Pursuant to the October 2016 Judgment, the trial court held in favor of Waterview and denied Cropsey's counterclaims. A true and correct copy of the October 2016 Judgment is attached hereto as **Exhibit "F."**

61. The October 2016 Judgment declared that Waterview held title to the Disputed Area by adverse possession and the practical location doctrine, that Cropsey held no right, title or interest to the Disputed Area, but does hold title to up to the center line of that portion of Centre Place that abuts Lot 48 via the Vesting Deed, and holds an implied easement over and up to the center line of that portion of Centre Place that abuts Lot 51, which implied easement runs over Centre Place to 26th Avenue for purposes of access. The trial court also cancelled of record the First and Second 2007 Deed and the 2008 Deed.

62. In reaching its decision, the trial court found the testimony of Cropsey's expert, Mr. Pomerantz, to be "unsupported by the evidence and simply incredible," because Mr. Pomerantz admitted that his interpretation of the topographical map as it relates to Centre Place, contained in his affidavit submitted by Cropsey in opposition to a motion for summary judgment filed by Waterview in 2013, was wrong. *See* Exhibit F, p. 26.

63. The trial court later rejected Mr. Pomerantz's expert testimony as it relates to Cropsey's rights to and over Centre Place as being "incredible based on his contradictory and inconsistent testimony." *See* Exhibit F, p. 27.

64. On December 13, 2016, on motion by Waterview's attorneys, the trial court entered the Order After Trial declaring, among other things, that Waterview is the owner of the Disputed Area by adverse possession, and ordering that the Kings County Clerk record the Order After Trial and expunge from the public record the Second 2007 Deed and the 2008 Deed, further declaring that all parties owning property adjoining Centre Place have an implied easement over Centre Place to drive down the center thereof for access and dismissing Cropsey's counterclaims. A true and correct copy of the Order after Trial is annexed hereto as **Exhibit "G."**

## The Appeal

65. Cropsey filed a notice of appeal, dated January 19, 2017, appealing the Order After Trial.

66. Cropsey perfected the Appeal by filing an appellate brief dated September 15, 2017.

67. Waterview opposed the Appeal by appellate brief dated November 14, 2017.

68. Cropsey filed a reply to Waterview's opposition by appellate brief dated December 7, 2017.

69. Oral argument on the Appeal was held on October 15, 2019, and by Decision and Order dated March 11, 2020, the Second Department affirmed the Order After Trial.

### Cropsey's Claim and CLTIC's Coverage Determination

70. By letter dated December 18, 2018 (the "2018 Letter"), Cropsey, for the first time, submitted a claim to CLTIC seeking reimbursement of attorneys' fees and indemnification for losses associated with the Quiet Title Action, claiming the Policies covered the entirety of Centre Place.

71. Upon information and belief, Ridge Abstract did not have notice or knowledge of the Quiet Title Action at the time the Modified Ridge Policy was issued or prior to the 2018 Letter. Nevertheless, even if Ridge Abstract did have notice or knowledge of the Quiet Title Action, that does not constitute notice of the claim to CLTIC under the express terms of the Ridge Policy, which require that notice of a claim be given in writing to CLTIC at the address indicated.

72. Although Mr. Prignoli in his capacity as Cropsey's litigation counsel in the Quiet Title Action had knowledge of the Quiet Title Action, Mr. Prignoli's knowledge of the Quiet Title Action does not constitute notice of the claim to CLTIC under the express terms of the Sienna Policy, which require that notice of a claim be given in writing to CLTIC at the address indicated.

73. Further, Mr. Prignoli's knowledge of the Quiet Title Action cannot be imputed to CLTIC because, upon information and belief and for the reasons discussed previously, in issuing the Sienna Policy, Mr. Prignoli totally abandoned CLTIC's interests and acted entirely for the benefit and purpose of Cropsey by colluding with Cropsey to obtain a policy insuring the outcome of the Quiet Title Action via a failure to disclose the Quiet Title Action to CLTIC before the date of the Sienna Policy's issuance.

74. CLTIC denied coverage for the Claim under various policy provisions and reaffirmed that decision in response to Cropsey's subsequent letters dated August 31, 2019 and October 31, 2021 which requested reconsideration of CLTIC's coverage determination. True and correct copies of Cropsey's claim letters are attached hereto as **Exhibit "H."**

75. True and correct copies of CLTIC coverage letters are attached hereto as **Exhibit "I."**

**AS FOR THE FIRST CAUSE OF ACTION**

**(Declaratory Judgment)**

76. CLTIC repeats and realleges each and every allegation of paragraphs "1" through "71" of the Complaint as though fully set forth herein.

**The Notice Provision of the Policies Precludes Coverage**

77. Cropsey admitted during the July 2014 Quiet Title Action trial via the testimony of its principal Mr. Giammona that Cropsey submitted no claim to CLTIC in connection with the Quiet Title Action.

78. Cropsey failed to provide written notice of claim in connection with the Quiet Title Action to CLTIC until 4.5 years after Mr. Giammona's testimony, on December 18, 2018, nearly 12 years after the Quiet Title Action commenced, more than 2 years after the October 2016 Judgment was entered, and more than one year after the Appeal was perfected.

79. Pursuant to Condition 3 of the Policies, only written notice to CLTIC constitutes notice of a claim.

80. Any notice to Ridge regarding the Quiet Title Action is insufficient to constitute notice of a claim to CLTIC pursuant to the terms of the Ridge Policy

81. Similarly, any notice to Mr. Prignoli's regarding the Quiet Title Action is insufficient under the Sienna Policy and does not constitute notice of a claim to CLTIC.

15

82. In addition, Mr. Prignoli's knowledge of the Title Quiet Action in his capacity as Cropsey's attorney cannot be imputed to CLTIC because upon information and belief (a) Mr. Prignoli, in issuing the Sienna Policy, totally abandoned CLTIC's interests and was acting exclusively for the benefit of Cropsey and to the detriment of CLTIC and Commonwealth did not have actual knowledge of the Quiet Title Action; (b) at the time the Sienna Policy was issued, it was reasonably foreseeable that Cropsey's interests and CLTIC's interests could become adverse and/or were adverse by virtue of the Quiet Title Action; and (c) Commonwealth had no actual knowledge of the Quiet Title Action until Cropsey's December 18, 2018 claim because no notice of pendency was filed in connection with the Quiet Title Action.

83. Providing written notice of claim nearly 12 years after the Quiet Title Action completed and more than one year after the Appeal was perfected is not prompt notice as required by Condition 3 of the Policies.

84. Cropsey's late notice of claim denied CLTIC the ability to participate whatsoever in the Quiet Title Action, an opportunity to defend Cropsey in the Quiet Title Action, and/or to resolve such matter on more favorable terms to Cropsey.

85. Cropsey's late notice of claim denied CLTIC the ability to participate whatsoever in the Appeal, an opportunity to defend Cropsey in the Appeal, and/or to resolve such Appeal on more favorable terms to Cropsey.

86. Pursuant to Condition 3 of the Policies, if CLTIC is prejudiced by Cropsey's late notice, CLTIC's liability to Cropsey, to the extent there was any liability under the Policies, shall be reduced to the extent of the prejudice.

87. Denying CLTIC the opportunity to participate in the Quiet Title Action and the Appeal in any way constitutes actual and full prejudice to CLTIC thereby reducing any liability CLTIC may have had to Cropsey to zero.

88. CLTIC also suffered extreme prejudice by the manner in which the Quiet Title Action was handled in CLTIC's absence.

89. Accordingly, CLTIC properly denied coverage and indemnification to Cropsey pursuant to Condition 3 of the Policies.

**The Ridge Policy and Modified Ridge Policy does not Cover the Disputed Area**

90. The land at issue in the Quiet Title Action includes only the Disputed Area.

91. Schedule A of the Ridge Policy does not include the Disputed Area.

92. Accordingly, there is no liability for the Disputed Area under the Ridge Policy for loss of the Disputed Area, as that land is not insured under said policies.

**The Parties in Possession Exception Precludes Coverage**

93. Exception 2 of the Ridge Policy and Exception 3 of the Sienna Policy operate to except from coverage the possessory rights of parties in actual possession of the property, whose possessory rights are not ascertainable from the public record.

94. In the Quiet Title Action Waterview claimed to own Centre Place and ultimately the Disputed Area by way of adverse possession.

95. There was no notice of pendency recorded in the land records in connection with the Quiet Title Action.

96. Waterview's claims of adverse possession to Centre Place and ultimately the Disputed Area were not ascertainable from the public records.

97. Accordingly, Exception 2 of the Ridge Policy and Exception 3 of the Sienna Policy remove from coverage Waterview's claims of adverse possession to Centre Place and ultimately the Disputed Area.

98. As such, CLTIC properly denied coverage to Cropsey pursuant to Exception 2 of the Ridge Policy and Exception 3 of the Sienna Policy.

**Exclusion 3(a) of the Policies Precludes Coverage under the Sienna Policy.**

99. Exclusion 3 (a) of the Sienna Policy removes coverage for title defects "created, suffered, assumed or agreed to by the insured claimant."

100. Cropsey was aware of Waterview's claim to the Disputed Area before it transferred title to the Disputed Area to itself via the Second 2008 Deed insured by the Sienna Policy.

101. At the time of the Second 2008 Deed, the Quiet Title Action had already commenced and Cropsey had already filed the Quiet Title Action Answer.

102. Cropsey transferred the Disputed Area to itself and obtained the Sienna Policy with full knowledge of Waterview's claims.

103. Accordingly, Cropsey suffered, assumed and/or agreed to the Quiet Title Action and Waterview's claims.

104. As such, CLTIC properly denied coverage for the Quiet Title Action pursuant to Exclusion 3 (a) of the Sienna Policy.

**Exclusion 3(b) Precludes Coverage under the Sienna Policy**

105. Exclusion 3 (b) of the Sienna Policy removes from coverage any claims "not known to the Company, not recorded in the Public Records at Date of Policy but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy."

106.    Cropsey was aware of the Quiet Title Action and Waterview's claim to the Disputed Area for over a year before it transferred the Disputed Area to itself via the Second 2008 Deed.

107.    No notice of pendency was filed in the land records placing CLTIC on notice of said Quiet Title Action.

108.    Upon information and belief, Cropsey made no disclosures to CLTIC of the Quiet Title Action and for the reasons discussed above Mr. Prignoli's knowledge of the Quiet Title Action in his capacity as Cropsey's attorney cannot be imputed to CLTIC.

109.    Since the purported title defect was not known to CLTIC and not recorded in the public records on the date of the Sienna Policy but was known to Cropsey and not disclosed in writing to CLTIC prior to the date Cropsey became an Insured under the Sienna Policy, Cropsey's claim under the Sienna Policy is excluded from coverage pursuant to Exclusion 3 (b).

110.    By reason of the foregoing, CLTIC is entitled to judgment declaring that CLTIC has no obligation under the policies to indemnify Cropsey in connection with the Quiet Title Action or the Appeal or to reimburse Cropsey for attorneys' fees, costs and other expenses associated with the Quiet Title Action and/or the Appeal.

**WHEREFORE**, CLTIC demands judgment,

(1) Declaring that CLTIC has no obligation under the Policies to provide coverage to Cropsey, to indemnify Cropsey for any loss suffered by virtue of the Quiet Title Action and Appeal and has no obligation under the Policies to reimburse Cropsey for any attorneys' fees, costs or expenses associated with the Quiet Title Action and Appeal.

(2) Awarding CLTIC interest, attorneys' fees, and costs; and

(3) Providing for such other and further relief as the Court may deem just and proper.

Dated: New York, New York
May 2, 2022

                                FIDELITY NATIONAL LAW GROUP

                                By: _/s/ Joyce A. Davis_____
                                    Joyce A. Davis, Esq. - JD-3627
                                    711 3rd Avenue, 8th Floor New York, New York 10017 T: (646) 432-8590
                                    F: (646) 219-2852
                                    Joyce.Davis@fnf.com *Attorneys for Plaintiff*