UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

COMMONWEALTH INSURANCE CO.,

        Plaintiff,

v.

2610 CROPSEY DEVELOPMENT CORP.,

        Defendant.

-------------------------------------------------------x

**MEMORANDUM AND ORDER**
22-CV-2512 (BMC) (PK)

BRIAN M. COGAN, United States District Judge:

    Plaintiff Commonwealth Insurance Co. issued defendant 2610 Cropsey Development Corp. two title insurance policies that covered separate sections of a private road located between a property owned by Cropsey and an adjacent property owned by non-party Waterview Towers, Inc. An underlying quiet title action in New York state court divested Cropsey of title to certain portions of the private road. In the present federal suit, Commonwealth seeks a declaration that it owes no obligation under the policies to indemnify Cropsey for any loss or to reimburse it for its attorney's fees related to the quiet title action. Cropsey counterclaims for breach of the title policies.

    Commonwealth and Cropsey have filed cross-motions for summary judgment. Commonwealth also separately moves to disqualify Cropsey's attorneys in this action pursuant to the advocate-witness rule. Because both insurance policies' exceptions to coverage for parties in possession apply to the quiet title action, Commonwealth owed no duty to defend or indemnify Cropsey. Accordingly, Commonwealth's motion for summary judgment is granted,

1

and Cropsey's is denied. Commonwealth's motion to disqualify Cropsey's attorneys is denied as moot.

## BACKGROUND

In 2005, defendant 2610 Cropsey Development Corp. purchased two lots of real property, lots 48 and 51, located at 2610–2620 Cropsey Avenue in Brooklyn, New York. These lots were adjacent to property owned by Waterview Towers, Inc. Between the Cropsey and Waterview properties lay a 50 x 181–foot private road known as Centre Place. Waterview and its predecessor-in-interest had long used the half of Centre Place abutting Waterview's property as parking for residents of Waterview's nearby co-op building. Ownership of Centre Place was important to Cropsey because the extra space would permit Cropsey to develop a larger project than it had originally anticipated.

Upon purchasing the property, Cropsey obtained a policy from Ridge Abstract Corp., underwritten by Commonwealth, that insured the title to lots 48 and 51, but not to any portion of Centre Place. However, in February 2006, after being presented with historical ownership data by Cropsey, Ridge's employee Christopher Beck orally agreed to modify the policy to include the 25 x 181–foot half of Centre Place that abutted Cropsey's property. In March 2006, Cropsey sent a letter to Waterview, claiming that Cropsey owned the entirety of Centre Place and requesting that Waterview temporarily cease parking cars on the street.

Over a year later, on April 6, 2007, Waterview filed a quiet title action against Cropsey in New York state court, seeking a determination of ownership over the road. See Waterview Towers, Inc. v. 2610 Cropsey Dev. Corp., 53 Misc.3d 1214(A), 48 N.Y.S. 268, 2016 WL 6807937, at *1 (N.Y. Sup. Ct. 2016) (table). Cropsey then reached back out to Beck to inquire

about the modified policy, which Cropsey had never received. Ridge issued the modified policy as agreed, backdated to April 2005.

Waterview's original complaint in the quiet title action asserted "title to the entirety of Centre Place by way of adverse possession." It also claimed that Waterview held a deeded interest in the half of Centre Place abutting its property. On May 31, 2007, Cropsey, by way of Ridge, executed two deeds purporting to convey title to the half of Centre Place abutting the Cropsey property to itself.

On January 31, 2008, the state court issued a ruling holding that Waterview did not hold a deeded interest in Centre Place, but that disputes of material fact existed for Waterview's adverse possession claim. After this ruling, in August 2008, Cropsey recorded a deed purporting to convey the half of Centre Place abutting the Waterview property to itself. Cropsey also purchased a second title insurance policy from Sienna Abstract, LLC, underwritten by Commonwealth, that insured the Waterview half of Centre Place. At the time, Sienna's president and owner, Robert Prignoli, also served as Cropsey's counsel in the Waterview action. Cropsey then counterclaimed, seeking a declaration that it held title to the entirety of Centre Place.

The parties continued to litigate the case in New York state court, including through an eleven-day bench trial in 2014. During trial, Waterview narrowed its complaint so that it was seeking title to only the half of Centre Place abutting its property, up to the center line of the road, via adverse possession. On October 31, 2016, the New York court issued a decision awarding Waterview ownership over the half of Centre Place that abutted its property – the entire property covered by the Sienna Policy – via the doctrine of adverse possession. With respect to Cropsey's counterclaims, the court ruled that Cropsey's deed in lot 48 conveyed it

3

rights to the half of Centre Place abutting that lot, but not the half of Centre Place abutting lot 51. The court expunged the 2007 deeds that Cropsey had executed conveying the Cropsey side of Centre Place to itself, as well as the 2008 deed which purported to convey the Waterview side.[1] The court's decision was affirmed on appeal by the New York Appellate Division, Second Department. See Waterview Towers, Inc. v. 2610 Cropsey Dev. Corp., 181 A.D.3d 754, 755, 122 N.Y.S.3d 92, 94 (App. Div. 2020).

The parties hotly dispute whether Commonwealth ever acquired constructive notice of the Waterview quiet title action prior to that case's final judgment. Cropsey claims that various forms of notice of the action were provided at different points in time to both Beck and Prignoli, who, as agents for Commonwealth, should have their knowledge of the case imputed to Commonwealth. It is undisputed, however, that Cropsey sent its first written, formal claim letters to Commonwealth regarding the Waterview action on December 18, 2018 – nearly twelve years after Waterview initiated its quiet title action and over two years after the trial court's judgment.

Both Cropsey and Commonwealth then filed suit here. The two cases, identical in all material respects, were consolidated under Federal Rule of Civil Procedure 42(a)(2). Commonwealth seeks a declaration that it has no obligation under the insurance policies to indemnify or reimburse Cropsey for its losses, attorney's fees, and costs incurred in litigating the quiet title action. Cropsey counterclaims for breach of contract under both policies, seeking to be indemnified for its losses and to be reimbursed for its litigation expenses. Following discovery, the parties filed cross-motions for summary judgment.

---

[1] Cropsey's briefing asserts that the trial court's judgment expunged its interest in all of Centre Place, but the trial court's opinion explicitly stated that Cropsey's rights to the portion of Centre Place abutting lot 48 derived from the original deed conveyed to it in 2005, which the court's judgment did not disturb.

4

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A genuine issue of fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Frost v. N.Y.C. Police Dep't, 980 F.3d 231, 242 (2d Cir. 2020) (citation and quotation marks omitted).  "A fact is material if it might affect the outcome of the suit under governing law."  Id. (citation and quotation marks omitted).  In determining whether there is a genuine issue of material fact, a court evaluates the whole record, resolving all ambiguities and drawing all reasonable factual inferences in favor of the non-movant.  Id.  A nonmoving party can survive summary judgment only if there is sufficient evidence to permit a rational trier of fact to find in that party's favor.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986).

"The same standard applies where, as here, the parties filed cross-motions for summary judgment."  Morales v. Quintel Ent., Inc., 249 F.3d 115, 121 (2d Cir. 2001).  "[E]ach party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration."  Id.

## DISCUSSION

Commonwealth moves for summary judgment, arguing that the Waterview quiet title action falls within a number of exclusions and exceptions to coverage, as well as that Cropsey unduly delayed in notifying Commonwealth of the existence of the action.  Cropsey opposes and moves for summary judgment in turn.  For the reasons that follow, Commonwealth's motion for summary judgment is granted and Cropsey's is denied because both policies' exceptions to

coverage for claims by parties in possession cover the Waterview quiet title action. The Court thus need not reach the remainder of the parties' arguments.

## I. Legal Standard

The parties agree that New York law applies to the interpretation of the insurance policies at issue here. Under New York law, insurance policies are subject to ordinary principles of contract interpretation. In re Ests. of Covert, 97 N.Y.2d 68, 75, 735 N.Y.S.2d 879, 884 (2001). "[L]ike other contracts," insurance policies "are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous the terms are to be taken and understood in their plain, ordinary and proper sense." Id. at 76 (citation omitted). "In determining a motion for summary judgment involving the construction of contractual language, a court should accord that language its plain meaning giving due consideration to the surrounding circumstances and apparent purpose which the parties sought to accomplish." Palmieri v. Allstate Ins., 445 F.3d 179, 187 (2d Cir. 2006) (quoting Thompson v. Gjivoje, 896 F.2d 716, 721 (2d Cir. 1990)). Ambiguity in a policy exists "when – after it is viewed objectively – more than one meaning may reasonably be ascribed to the language used." Id. Any ambiguity in an insurance contract is construed against the insurer. Ment Bros. Iron Works Co. v. Interstate Fire & Cas. Co., 702 F.3d 118, 124 (2d Cir. 2012) (citing Belt Painting Corp. v. TIG Ins., 100 N.Y.2d 377, 383, 763 N.Y.S.2d 790, 792 (2003)).

"The duties to defend and indemnify are separate and distinct." Barney Greengrass, Inc. v. Lumbermens Mut. Cas. Co., 445 F. App'x 411, 413 (2d Cir. 2011). The duty to defend is "exceedingly broad." Auto Ins. Co. of Hartford v. Cook, 7 N.Y.3d 131, 137, 818 N.Y.S.2d 175, 179 (2006) (citation omitted). "An insurer must defend whenever the four corners of the complaint suggest – or the insurer has actual knowledge of facts establishing – a reasonable

6

possibility of coverage." Md. Cas. Co. v. Cont'l Cas. Co., 332 F.3d 145, 160 (2d Cir. 2003) (quoting Cont'l Cas. Co. v. Rapid-Am. Corp., 80 N.Y.2d 640, 647, 593 N.Y.S.2d 966, 970 (1993)). An insurer may refuse only if "there is no possible factual or legal basis on which the insurer might eventually be held to be obligated to indemnify the insured under any provision of the insurance policy." High Point Design, LLC v. LM Ins., 911 F.3d 89, 95 (2d Cir. 2018) (quoting Servidone Constr. Corp. v. Sec. Ins. Co. of Hartford, 64 N.Y.2d 419, 424, 488 N.Y.S.2d 139, 142 (1985) (internal citation omitted)). "If any of the claims against the insured arguably arise from covered events, the insurer is required to defend the entire action." Id. (quoting Frontier Insulation Contractors, Inc. v. Merchs. Mut. Ins., 91 N.Y.2d 169, 175, 667 N.Y.2d 982, 985 (1997)).

Under New York law, the policyholder bears the initial burden of showing that the insurance policy covers the claims at issue. Morgan Stanley Grp. Inc. v. New England Ins., 225 F.3d 270, 276 (2d Cir. 2000). The burden then shifts to the insurer to prove that an exclusion to coverage applies. Ment Bros., 702 F.3d at 121 (citing Consol. Edison Co. of N.Y. v. Allstate Ins., 98 N.Y. 208, 217, 746 N.Y.S.2d 622, 625 (2002)). If the insurer establishes that an exclusion applies, the burden of proof shifts back to the policyholder "to establish the applicability of an exception to the exclusion." Id. at 121–22 (emphasis omitted).

## II. The Parties-in-Possession Exception

Both the Modified Ridge Policy and the Sienna Policy contain an exception to coverage by claims of "persons" or "parties" "in possession." The Modified Ridge Policy's exception reads: "The following are expressly excluded from coverage of Policy, and the Company will not pay loss or damage costs, attorneys' fees, or expenses which arise by reason of . . . Rights of tenants or persons in possession." The Sienna Policy's exception is worded slightly differently:

7

"This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which may arise by reason of . . . Rights or cla[i]ms of parties in possession not shown by public records." Elsewhere, the Sienna Policy defines "Public Records" as "Records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge."

### III.     Modified Ridge Policy

Because the Waterview quiet title action falls within the Modified Ridge Policy's exception to coverage for claims by parties in possession, Commonwealth's motion for summary judgment is granted and Cropsey's is denied.

An insurer owes no duty to defend if "there is no possible factual or legal basis on which the insurer might eventually be held to be obligated to indemnify the insured under any provision of the insurance policy." High Point Design, LLC, 911 F.3d at 95 (quoting Servidone Constr. Corp., 64 N.Y.2d at 424, 488 N.Y.S.2d at 444). The original Waterview complaint asserted title to the portion of Centre Place insured by the Modified Ridge Policy solely via the doctrine of adverse possession, asserting that Waterview "continuously, openly, and notoriously" occupied the Cropsey portion of Centre Place. Claims of adverse possession fall "squarely" within the scope of the Modified Ridge Policy's exception to coverage for claims by parties in possession. See Melamed v. First Am. Title Ins., 190 A.D.3d 724, 724, 135 N.Y.S.3d 874, 875 (2nd Dep't 2021) ("Abeles's claim for possession of a portion of the plaintiffs' property by adverse possession was a claim arising from the rights of persons in possession."); Herbil Holding Co. v. Commonwealth Land Title Ins., 183 A.D.2d 219, 228, 590 N.Y.S.2d 512, 518 (2nd Dept. 1992) (explaining that the parties-in-possession exception is designed in part to exempt claims

8

"founded on . . . possession alone (*i.e.*, adverse possession)"); see also 11A Couch on Insurance § 159:71 (3d ed. Supp. 2024) (explaining that a parties-in-possession exception is a "standard exception from coverage specifically relating to claims such as adverse possession"). Accordingly, none of the claims in the Waterview action even arguably arose from events covered by the Modified Ridge Policy, meaning the insurer owed no obligation under that policy to defend the action. See Frontier Insulation Contractors, Inc. v. Merchants Mut. Ins., 91 N.Y.2d 169, 175, 667 N.Y.S.2d 982, 985 (1997) ("If any of the claims against the insured arguably arise from covered events, the insurer is required to defend the entire action."); Melamed, 190 A.D.3d at 724, 135 N.Y.S.3d at 875 (concluding that the insurer was not obligated to defend an adverse possession suit because there was "no possible factual or legal basis on which [the insurer] might eventually be obligated to indemnify the plaintiffs" (quotation marks and citation omitted)).

Cropsey asserts that the portion of Centre Place insured by the Modified Ridge Policy was never in reality occupied by Waterview. Cropsey argues that this fact is dispositive and forecloses application of the parties-in-possession exception. But if it is true that Waterview never occupied the Cropsey portion of Centre Place, then Waterview's adverse possession claim predicated on actual possession would necessarily fail on the merits – either way, there is no possibility that the claim could eventually result in a loss for which Commonwealth would be required to indemnify Cropsey. Where "the only theory of liability requires proof of [conduct] encompassed by the exclusion, the insurance carrier has no duty to indemnify and is therefore relieved of the duty to defend." Tartaglia v. Home Ins., 240 A.D.2d 396, 398, 658 N.Y.S.2d 388, 398 (2nd Dept. 1997) (applying this principle in the context of an exception to coverage for fraudulent conduct by the insured). Accordingly, the Waterview suit never triggered Commonwealth's duty to defend.

9

And because Commonwealth owed no duty to defend, it also necessarily owes no duty to indemnify.  See EAD Metallurgical, Inc. v. Aetna Cas. & Sur. Co., 905 F.2d 8, 11 (2d Cir. 1990) (explaining that because "the duty to defend is broader than the duty to indemnify, . . . it is unnecessary to engage in a separate analysis of [an insurer's] separate claim that it has no duty to indemnify apart from [the] claim[] that [it] have no obligation to defend"); see also Lewis v. Stanzione v. St. Paul Fire & Marine Ins., No. 13-cv-863, 2015 WL 3795780 (N.D.N.Y. June 17, 2015) (concluding that an insurer owes no duty to indemnify, based on its conclusion that the insurer owed no duty to defend); BF Advance, LLC v. Sentinel Ins., No. 16-cv-5931, 2018 WL 4210209, at *14 (E.D.N.Y. March 20, 2018) (same).

## IV.    Sienna Policy

Because the Waterview quiet title action falls within the Sienna Policy's exception to coverage for claims by parties in possession not shown by public records, Commonwealth's motion for summary judgment is granted and Cropsey's is denied.

Unlike for the Modified Ridge Policy, Cropsey does not dispute that the Waterview action represented an adverse claim by a party "in possession" of the half of Centre Place abutting Waterview's property under the Sienna Policy.  Nor does Cropsey dispute that Waterview's interest in Centre Place was not recorded with the New York City Office of the City Register, as required to satisfy the policy's definition of "Public Records."  See generally Fawn Second Ave. LLC v. First Am. Title Ins., 610 F. Supp. 3d 621, 631-32 (S.D.N.Y. 2022) (explaining New York City's real property recordation system).[2]

---

[2] New York law provides a "notice of pendency" procedure, not exercised here, by which a party may record and thereby give constructive notice of an outstanding legal action whose resolution may affect title to real property.  See N.Y. C.P.L.R. §§ 6501(a), 6511.

10

Instead, Cropsey's only argument is that the parties-in-possession exception's use of "public records," uncapitalized, refers to a different – and broader – set of records than the policy's definition of "Public Records," capitalized. Because pleadings in court proceedings qualify as "public records" as that phrase is used in common parlance, Cropsey argues, Waterview's complaint in the quiet title action is a "public record" showing the existence of Waterview's adverse possession claim to Centre Place, and the parties-in-possession exception does not apply. Cropsey points to no authority interpreting a parties-in-possession exception in a title insurance policy the way it proposes. Instead, it cites two cases where the definition of a contract term in capital letters (i.e., "Public Records") was not applied to later usage of that phrase that was uncapitalized (i.e., "public records"). See Sonterra Cap. Master Fund, Ltd. v. Barclays Bank PLC, 403 F. Supp. 3d 257, 265–66 (S.D.N.Y. Aug. 16, 2019) ("Securities" versus "securities class action lawsuit"); In re LightSquared Inc., 511 B.R. 253, 316 (Bankr. S.D.N.Y. 2014) ("Subsidiary" versus "subsidiary").

This difference in capitalization cannot justify Cropsey's sweeping argument. Interpreting the insurance policy requires consideration of the meaning of the words "public records" in "the context of the entire integrated agreement, . . . cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, London, 136 F.3d 82, 86 (2d Cir. 1998) (citation omitted). Examining that context confirms that the parties-in-possession exception invokes the policy's definition of "Public Records." The purpose of such an exception is to protect the insurer from title defects that cannot be discovered through searching the chain of title. See Herbil Holding Co., 183 A.D.2d at 224, 590 N.Y.S.2d at 515-16 (citing Guarantee Abstract & Title Ins. v. St. Paul Fire & Marine Ins., 216 So. 2d 255, 257 (Fla.

Dist. Ct. App. 1968)). "When a person, who does not appear in the chain of title, is found in possession of property it may indicate, for example, that he is making claim to the property by adverse possession, or that he is claiming under an unrecorded deed." Id. at 224 (quoting Guarantee Abstract & Title Ins., 216 So. 2d at 257); see also id. at 228 ("The title company does not want to be held responsible for some unknown person who might be able to make a claim founded on either the possession alone (*i.e.*, adverse possession) or an instrument which would not cross the examiner's path if the public records were examined – for example, an unrecorded deed."). So, "to protect themselves and to put their client on notice of this state of affairs, title examiners and title insurance companies generally exclude from their title opinions and policies claims of parties in actual possession of the land." Id. at 224 (quoting Guarantee Abstract & Title Ins., 216 So. 2d at 257). The risk is instead passed along to the insured party, who is in a better position to physically observe a competing claimant in actual possession of the property.

In context, then, "public records" refers to exactly what the policy has defined it as – the well-defined set of "Records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge." See Fawn Second Ave. LLC, 610 F Supp. 3d at 631-32. There is no reason to expect an insurer would draft a policy committing themselves to search through every single court filing or other set of documents that could conceivably constitute "public records" for evidence of an adverse claim. Indeed, the outer bounds of Cropsey's definition are hard to discern, and courts have rejected it. See, e.g., Hon Realty Corp. v. First Am. Title Ins., 291 F. App'x 951, 953 (11th Cir. 2008) (interpreting identical "public records" definition in title insurance policy to include only "those records filed under a state recording statute and not those

12

general public records that may be available from, for example, a public records request with the state or a local municipality").

## CONCLUSION

For the foregoing reasons, Commonwealth's motion for summary judgment is granted and Cropsey's motion for summary judgment is denied. Commonwealth is entitled to a declaratory judgment that it has no obligation under the Modified Ridge and Sienna Policies to indemnify Cropsey for any loss or to reimburse Cropsey for any attorney's fees, costs, or expenses associated with the Waterview quiet title action and appeal. Cropsey's counterclaims are dismissed. Commonwealth's motion to disqualify 2610 Cropsey Development Corp.'s counsel, Linda Agnew and Harras Bloom & Archer LLP, is denied as moot. Commonwealth is directed to submit a proposed form of declaratory judgment within seven days.

**SO ORDERED.**

*Brian M. Cogan*
BRIAN M. COGAN
United States District Judge

Dated: October 24, 2025
       Brooklyn, New York